IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR JOHN GALLIGAR,

    Plaintiff,

v.

MARK NOOTH, STEVE FRANKE, et al.,

    Defendants.

2:12-cv-01891-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

    Incarcerated plaintiff Arthur John Galligar filed this action *pro se* against Mark Nooth, Steve Franke, Lieutenant Duftoth, Captain Mark Peterson, V. Reynolds, Lieutenant Osborn, Sergeant Krieger, Officer Ward, Officer V. Demos, Officer H. Demos, two Doe defendants, Captain Jackson, Michael Vokral, Joseph Bugher, and Al Hannon on October 15, 2012.[1] Galligar alleges the defendants violated 42 U.S.C. § 1983 by failing to protect him from attacks by other inmates. This court has federal-question jurisdiction over Galligar's claims pursuant to 28 U.S.C. § 1331.

    Now before the court is the defendants' Federal Rule of Civil Procedure 56 motion for

---

[1] The caption of Galligar's initial complaint listed only Nooth and Franke as defendants, but the "parties" section listed additional defendants, in violation of Local Rule 10-2(d). *See* Prisoner Civil Rights Compl., #2, at 1, 3. Consequently, I entered an order on February 7, 2013, dismissing Galligar's initial complaint with leave to file an amended complaint within thirty days. Order to Dismiss, #8. Galligar's amended complaint still fails to properly name the defendants in the caption. *See* Am. Prisoner Civil Rights Compl. ("Compl."), #10, at 1.

PAGE 1 – FINDINGS AND RECOMMENDATION

summary judgment (#35-1) and Federal Rule of Civil Procedure 12(e) motion for a more definite and certain statement of Galligar's claims (#35-2).[2] I have considered the motions, supporting declarations and exhibits, and all of the pleadings on file. For the reasons set forth below, the defendants' motion for summary judgment should be granted in part and denied in part, and the defendants' motion for a more definite and certain statement of Galligar's remaining claims should be granted.

## LEGAL STANDARD

### I. Motion for Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the court must draw all reasonable inferences in

---

[2] The defendants' motion for summary judgment was initially filed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). In light of the recent Ninth Circuit decision in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), I entered an order on April 25, 2014, construing the defendants' motion to dismiss as a Rule 56 motion for summary judgment and permitting Galligar to file an additional response. Order, Apr. 25, 2014, #59. Prior to *Albino*, courts within the Ninth Circuit treated motions seeking dismissal for failure to exhaust administrative remedies as "unenumerated" Rule 12(b) motions to dismiss. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *overruled by Albino*, 747 F.3d 1162. "[A]lthough it may be more a matter of a change of nomenclature than of practical operation," defendants within the Ninth Circuit can no longer use an unenumerated Rule 12(b) motion to allege failure to exhaust administrative remedies. *Albino*, 747 F.3d at 1166.

favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555 (1990).

## II.     Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), incarcerated plaintiffs are required to exhaust all administrative remedies available to them within the institutions in which they are housed before bringing any federal action in connection with prison conditions, including such actions brought under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a). "Prison conditions" include isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind as well as general conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement is applicable to all persons who are incarcerated at the time they file their civil actions, without regard to whether they may subsequently be released from custody prior to resolution of their claims. *See Cox v. Mayer*, 332 F.3d 422, 424–428 (6th Cir. 2003); *see also Talamantes v. Leyva*, 575 F.3d 1021, 1023–1024 (9th Cir. 2009).

Under the PLRA, courts lack discretion to consider claims challenging prison conditions, including claims for monetary damages, except where such claims are filed following complete exhaustion of available administrative remedies. The PLRA exhaustion requirement operates without regard to the nature of the available administrative remedies and without regard to the types of remedies available under the administrative grievance procedures. *See Porter*, 534 U.S. at 524, *citing Booth v. Churner*, 532 U.S. 731, 739, 740 n.5, 741 (2001). Complete exhaustion of available administrative remedies requires inmates to "complete the administrative review process in accordance with [all] applicable procedural rules, including deadlines." *Marella v.*

*Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (internal quotation mark omitted), *quoting Woodford v. NGO*, 548 U.S. 81, 88 (2006).

Inmates are not required to plead or demonstrate exhaustion before bringing prison conditions lawsuits. *Jones v. Bock*, 549 U.S. 199, 216 (2007). To the contrary, an incarcerated plaintiff's failure to satisfy the PLRA exhaustion requirement is an affirmative defense that is the defendant's burden to raise and prove. *See id.* Typically, "the appropriate procedural device for a pretrial determination of whether administrative remedies have been exhausted under the PLRA . . . is a motion for summary judgment under Rule 56." *Albino*, 747 F.3d at 1168. In the unusual case where a "failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.* at 1169 (citations omitted). "However, such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Id.*

### III. Motion for a More Definite and Certain Statement of Claims

Under Federal Rule of Civil Procedure 12(e):

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e).

## FACTUAL BACKGROUND[3]

### I. Parties

Galligar was admitted to the custody of the Oregon Department of Corrections ("ODOC") on March 12, 2009. Decl. of James Taylor ("Taylor Decl."), #38, ¶ 3. Galligar was

---

[3] The following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Rule of Civil Procedure 56.

PAGE 4 – FINDINGS AND RECOMMENDATION

initially housed at the Snake River Correctional Institution ("SRCI"), where he resided until he was transferred to the Two Rivers Correctional Institution ("TRCI") on November 30, 2011. *Id.*; Decl. of Robert Hillmick ("Hillmick Decl."), #37, ¶ 3.

Defendants Peterson and Vokral are captains at SRCI. Compl., #10, at 3; Mot. to Show Exs. ("Pl.'s Br."), #58-1, at 7. Defendant Nooth is a superintendent at SRCI. Compl., #10, at 3. Defendant Hannon is a security manager at SRCI. *Id.* at 5. The two Doe defendants are officers at SRCI. *Id.* at 4. Defendant Bugher is a counselor at SRCI. *Id.*

Defendant Krieger is a sergeant at TRCI. *Id.* at 3, 6. Defendant Jackson is a captain at TRCI. Pl.'s Br., #58-1, at 19. Defendants Duftoth and Osborn are lieutenants at TRCI. *Id.* at 15; Compl., #10, at 3. Defendant Franke is a superintendent at TRCI. Compl., #10, at 3. Defendant Reynolds is a grievance coordinator at TRCI. *Id.* Defendants Ward and V. Demos are officers at TRCI. *Id.* at 5. Defendant H. Demos is a counselor at TRCI. Pl.'s Br., #58-1, at 14.

## II. Grievance Procedure

Grievances at both SRCI and TRCI are processed according to a four-level procedure set forth in chapter 291, division 109 of the ODOC administrative rules. Hillmick Decl., #37, ¶ 5; Taylor Decl., #38, ¶ 5. Inmates are informed of the grievance procedure during orientation when they first arrive at the prison. Taylor Decl., #38, ¶ 6. The process is also set forth in the inmate handbook. *Id.* Additionally, inmates can ask any housing unit officer for a grievance form, which is accompanied by an instruction sheet. *Id.*

At level one of the grievance procedure, inmates are encouraged to informally communicate grievances with first line staff as their primary means of resolving disputes prior to formally filing a grievance. Or. Admin. R. 291-109-0140(1)(a). If the initial communication does not resolve the grievance, the inmate may proceed to level two by completing a grievance

form. *Id.* Grievance forms must be filed with the grievance coordinator within thirty days of the aggrieving incident and contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." *Id.* 291-109-0140(1)(b), -0150(2). An inmate cannot grieve misconduct reports or issues for which the inmate has filed suit in state or federal court. *Id.* 291-109-0140(3)(e), (i).

At level three, an inmate may appeal the grievance coordinator's decision regarding the inmate's level-two grievance form to the functional unit manager. *Id.* 291-109-0170(1). The inmate must file a grievance appeal form with the grievance coordinator within fourteen days of the date the level-two grievance response was sent to the inmate. *Id.* 291-109-0170(1)(b). At level four, the inmate may appeal the decision made by the functional unit manager by filing an additional grievance appeal form with the grievance coordinator within fourteen days of the date the level-three grievance response was sent to the inmate. *Id.* 291-109-0170(2).

### III. Material Facts

Galligar was involved in eight separate altercations with other ODOC inmates, all of whom were affiliated with prison gangs. Galligar has not provided the dates or the names of the other persons involved in the first three altercations (the "unspecified altercations"). However, it is undisputed that all three of the unspecified altercations occurred at SRCI sometime before September 25, 2011. *See* Compl., #10, at 5; Pl.'s Br., #58-1, at 10, 18.

On August 23, 2011, Galligar presented a picture of Inmate Butts to Vokral and Bugher, warning them that Butts was planning to attack him. Compl., #10, at 4. Neither Vokral nor Bugher acted in response. *Id.* On September 3, 2011, Galligar wrote an inmate communication form ("kyte") to Peterson, expressing "security concerns" and requesting to be moved out of Complex Three. *Id.*; Pl.'s Br., #58-1, at 11.

On September 23, 2011, Galligar was involved in his fourth altercation at SRCI, when he engaged in a fight with Inmate Abel in the Complex Three Dining Hall.[4] *Id.* at 10. As a result, Galligar was issued a misconduct report and placed in the Disciplinary Segregation Unit ("DSU"). Taylor Decl., #38, at 15–17. Butts was also housed in DSU at the time. Pl.'s Br., #58-1, at 10. Galligar and Butts were initially both handcuffed and placed into the same cell. *Id.* Two Doe officers then removed Butts's handcuffs and permitted Butts to physically assault Galligar. *Id.* The Butts assault was Galligar's fifth altercation at SRCI.

On September 25, 2011, Galligar sent a kyte to Hannon. Compl., #10, at 5. Although Galligar alleges in his complaint that he wrote the kyte after being attacked five times, he does not explain what the kyte pertained to and has not provided a copy to the court. *See id.*

On September 27, 2011, Galligar sent a kyte to his functional unit manager, complaining about the Abel and Butts altercations and requesting reconsideration of the resulting misconduct report. Pl.'s Br., #58-1, at 18. Consequently, prison officials conducted a misconduct hearing and determined that Galligar was involved in a mutual fight with Abel, in violation of Rule 2.06, Inmate Assault II. Taylor Decl., #38, at 16. Galligar appealed the hearing officer's decision to the Inspector General, who affirmed the hearing officer's determination. *Id.* at 18–20. As a result, Galligar's complaints pertaining to the Abel altercation were not reviewable under the ODOC grievance review system. *See* Or. Admin. R. 291-109-0140(3)(e).

On November 7, 2011, Galligar filed a tort claim notice with the Oregon Department of Administrative Services, alleging damages from the Abel and Butts altercations and naming Butts, Abel, Nooth, Peterson, Vokral, and Hannon as defendants. Pl.'s Br., #58-1, at 29–31.

---

[4] The responding officer apparently mistakenly recorded the date of the incident as July 23, 2011. *See* Taylor Decl., #38, at 15–16. However, the parties agree that the altercation occurred on September 23, 2011. *See* Pl.'s Br., #58-1, at 10, 29; Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Br."), #36, at 3.

Galligar's sixth altercation at SRCI occurred on November 13, 2011, when he was assaulted by an unnamed inmate. *See id.* at 8. Galligar reported the altercation to Captain Eastwood (who is not a party to this case) on November 17, 2011, and requested to be moved to Complex One. *Id.* Eastwood responded that the issue had been "investigated and forwarded to MOT."[5] *Id.*

Galligar filed his first level-two grievance on November 17, 2011, claiming that throughout the course of the year, he had been assaulted on five separate occasions and that the SRCI staff members responsible for his housing arrangements were acting with deliberate indifference to his safety by housing him with gang members. *Id.* at 3. The grievance coordinator rejected Galligar's grievance on November 21, 2011,[6] informing Galligar that he was prohibited from grieving issues raised in his November 7, 2011 tort claim notice. Taylor Decl., #38, ¶¶ 13–14; *see also* Defs.' Br., #36, at 10. Galligar never appealed the grievance coordinator's November 21, 2011 decision. However, he was transferred to TRCI several days later, on November 30, 2011. Taylor Decl., #38, ¶ 3; Hillmick Decl., #37, ¶ 3.

On January 13, 2012, Galligar filed a complaint in the United States District Court for the District of Oregon, naming Nooth, Peterson, Hannon, Vokral, Bugher, and the Inspector General as defendants and, with the exception of the two altercations with Inmate Asman discussed below, alleging the same constitutional violations that are at issue in this case. *See Galligar v. Nooth et al.*, No. 2:12-cv-00082-SI (D. Or. Aug. 23, 2012) [hereinafter *Galligar 1*]. Galligar filed a motion to voluntarily dismiss *Galligar 1* on August 1, 2012, acknowledging that he had not exhausted his administrative remedies. Defs.' Br., #36, at 5; Pl.'s Br., #58-1, at 32.

---

[5] I am unable to determine what MOT stands for.
[6] Consistent with the ODOC rules, I define the "rejection" date as the date the inmate received the grievance coordinator's decision, rather than the date the decision was actually made. *See* Or. Admin. R. 291-109-0170(1)–(2).

PAGE 8 – FINDINGS AND RECOMMENDATION

The court granted Galligar's motion and dismissed the case without prejudice on August 22, 2012. *Galligar 1*, No. 2:12-cv-00082-SI, Order, August 22, 2012, #35.

Galligar filed a level-two grievance on September 17, 2012, claiming that the TRCI staff had deliberately housed him in an active gang unit and assigned him a cellmate who was a gang member. Pl.'s Br., #58-1, at 4. Before receiving a response from the grievance coordinator, Galligar proceeded to level three of the grievance procedure by filing a grievance appeal form on September 24, 2012. Hillmick Decl., #37, at 11. The following day, the grievance coordinator rejected Galligar's appeal form, stating that Galligar "may not submit an appeal" because he had not yet received a response to his original grievance. Pl.'s Br., #58-1, at 25. On October 18, 2012, the grievance coordinator rejected Galligar's September 17, 2012 level-two grievance, stating that Galligar had been "housed appropriately and in accordance with ODOC rules and policies." Hillmick Decl., #37, at 13. Galligar never appealed the grievance coordinator's October 18, 2012 decision.

Meanwhile, on October 15, 2012, Galligar filed his first complaint in this case. Prisoner Civil Rights Compl., #2, at 4.

Galligar's seventh altercation occurred on October 21, 2012, when he was attacked at TRCI by Inmate Asman, Galligar's cellmate. Compl., #10, at 5. Galligar verbally reported the incident to Ward, Krieger, and V. Demos, all of whom failed to assign Galligar a new cellmate. *Id.* Asman and Galligar fought again in their cell at TRCI on November 4, 2012—Galligar's eighth and final altercation. *Id.* at 6; Hillmick Decl., #37, at 14. Galligar received a misconduct report for the November 4, 2012 altercation but not for the October 21, 2012 altercation. *See* Hillmick Decl., #37, at 14. He appealed the report, and prison officials conducted a misconduct hearing on November 8, 2012. *Id.* at 18–19. The hearing officer determined that Galligar

PAGE 9 – FINDINGS AND RECOMMENDATION

"committed a unilateral attack or was involved in a mutual fight," in violation of Rule 2.07, Inmate Assault III, and Rule 2.10, Disrespect I. *Id.* at 19. As a result, Galligar was placed in DSU from November 4, 2012, through November 17, 2012. *Id.*

On November 12, 2012, Galligar sent a kyte to Duftoth, asking to be placed in Unit Five when he was released from DSU. Pl.'s Br., #58-1, at 20. Duftoth responded that Galligar could not be relocated to a different unit because he had "no documented conflicts to review prior to [his] cell assignment." *Id.* Upon release from DSU, Galligar was again housed with gang members. Compl., #10, at 6.

Galligar filed his amended complaint in this case on February 14, 2013. *Id.* On June 10, 2013, Galligar filed a level-two grievance for the express purpose of exhausting his administrative remedies regarding the September 23, 2011 Butts altercation. Pl.'s Br., #58-1, at 24. On June 19, 2013, the grievance coordinator rejected the grievance as untimely. *Id.* at 26. On June 24, 2013, Galligar appealed the grievance coordinator's June 19, 2013 decision. *Id.* at 23. On June 28, 2013, the grievance coordinator rejected Galligar's appeal and informed Galligar that an untimely level-two grievance could not be appealed. *Id.* at 27.

## ANALYSIS

### I. Failure to Exhaust Administrative Remedies

The defendants move for summary judgment on all of Galligar's claims, alleging he failed to exhaust his administrative remedies. Galligar's complaint is not a model of clarity. However, I am able to infer two claims from the complaint: (1) SRCI staff were deliberately indifferent to Galligar's safety, and he was injured as a result; and (2) TRCI staff were deliberately indifferent to Galligar's safety, and he was injured as a result. As stated above, evidence in the record reveals six altercations occurred at SRCI and two altercations occurred at

TRCI. I will now discuss whether Galligar exhausted his administrative remedies regarding each of those altercations.

### A. Galligar's Claim Against SRCI Staff

Galligar alleges the liability of Peterson, Vokral, Nooth, and Bugher for failing to prevent the September 23, 2011 Butts altercation. It is unclear, however, whether Galligar also alleges liability predicated on the Abel altercation, the three unspecified altercations, or the November 13, 2011 altercation. Since Galligar is a *pro se* litigant, I will assume he alleges liability based on all six altercations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (citations omitted) (internal quotation marks omitted)).

First, I find that Galligar failed to exhaust his administrative remedies regarding the September 23, 2011 Butts altercation. As discussed above, Galligar successfully exhausted the first level of his administrative remedies on September 27, 2011, when he complained to his functional unit manager about the Butts altercation. However, Galligar did not file a level-two grievance within thirty days of the altercation. Under the ODOC rules, Galligar is now precluded from exhausting his administrative remedies. *See* Or. Admin. R. 291-109-0150(2). Therefore, Galligar's claims regarding the Butts altercation should be dismissed for failure to exhaust administrative remedies. *See Woodford*, 548 U.S. at 88 (holding that inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court").

Second, the defendants concede that "Galligar fully exhausted his administrative remedies concerning his claims regarding the alleged assault by Inmate Abel." Taylor Decl.,

PAGE 11 – FINDINGS AND RECOMMENDATION

#38, ¶ 23. Again, it is unclear whether Galligar even alleges liability based on the Abel altercation.

Third, Galligar failed to exhaust his administrative remedies regarding the unspecified altercations. As discussed above, it is undisputed that all of the unspecified altercations occurred before September 25, 2011. Galligar's first level-two grievance was filed on November 17, 2011, which was outside the thirty-day window provided by the ODOC rules. *See* Or. Admin. R. 291-109-0150(2). Additionally, to the extent the November 17, 2011 grievance pertained to the unspecified altercations, it violated the ODOC rules by failing to provide the dates and approximate times of the altercations. *See id.* 291-109-0140(1)(b). Under the ODOC rules, Galligar is now precluded from exhausting his administrative remedies. *See id.* 291-109-0150(2). Therefore, Galligar's claims regarding the unspecified altercations, to the extent he asserts such claims, should be dismissed for failure to exhaust administrative remedies. *See Woodford*, 548 U.S. at 88 (requiring proper exhaustion).

Finally, Galligar exhausted his administrative remedies regarding the November 13, 2011 altercation. As discussed above, Galligar reported the altercation to Eastwood on November 17, 2011, and requested to be moved to Complex One. Eastwood informed Galligar that the issue had been "investigated and forwarded to MOT." Pl.'s Br., #58-1, at 8. Shortly thereafter, on November 30, 2011, Galligar was moved to TRCI, where he felt safe about his housing assignment until September 11, 2012. *See* Pl.'s Br., #58-1, at 4, 13.

Although Galligar was moved to a new prison instead of Complex One within SRCI, the move constituted at least a partial grant of relief. Galligar had "no obligation to appeal from a grant of relief, or a partial grant that satisfie[d] him, in order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010) (citation omitted); *see also Wolf*

PAGE 12 – FINDINGS AND RECOMMENDATION

*v. Otter*, 1:12-CV-00526-BLW, 2014 WL 2504542, at **5–6 (D. Idaho June 3, 2014) (holding that an inmate had fully exhausted his administrative remedies when the warden's response to the inmate's complaints "indicated that the prison was addressing the problem"). Therefore, to the extent Galligar asserts a claim regarding the November 13, 2011 altercation, the defendants' motion for summary judgment of that claim should be denied.

### B.    Galligar's Claim Against TRCI Staff

Galligar alleges the liability of Ward, Krieger, V. Demos, and Osborn for failing to protect him from the October 21, 2012 and November 4, 2012 Asman altercations. Galligar additionally alleges the liability of Duftoth for assigning him a gang member for a cellmate on November 17, 2012.

Notwithstanding Galligar's failure to file a level-two grievance regarding either Asman altercation, he exhausted his administrative remedies regarding the November 4, 2012 altercation. As stated above, the defendants concede that Galligar was issued a misconduct report for the Abel altercation, and as a result, his "claims regarding the alleged assault by Inmate Abel were not reviewable under the grievance system," and he "fully exhausted his administrative remedies" concerning those claims. Taylor Decl., #38, ¶ 23. By extension, Galligar fully exhausted his available administrative remedies regarding the November 4, 2012 Asman altercation when, on that same day, he was issued a misconduct report for his involvement in the altercation. *See Albino*, 747 F.3d at 1173 (holding that a prisoner is "not required to exhaust a remedy that he had been reliably informed was not available to him"), *citing Marella*, 568 F.3d at 1027.

In making this finding, I note that, on their face, the ODOC rules do not prohibit an inmate who receives a misconduct report for his involvement in an altercation from grieving a

PAGE 13 – FINDINGS AND RECOMMENDATION

prison official's failure to protect him from that altercation. *See* Or. Admin. R. 291-109-0140(3)(e) ("An inmate cannot grieve the following: . . . Misconduct reports, investigations leading to or arising from misconduct reports, or disciplinary hearings, findings and sanctions . . . ."). However, since the defendants admit that Rule 291-109-0140(3)(e) is applied to effectively preclude grieving such conduct, they have not carried their burden of proving that Galligar failed to exhaust his available administrative remedies. *See Albino*, 747 F.3d at 1172 ("[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." (citation omitted)). Therefore, the defendants' motion for summary judgment should be denied to the extent it seeks dismissal of Galligar's claim regarding the November 4, 2012 Asman altercation. *See Sapp v. Kimbrell*, 623 F.3d 813, 823–824 (9th Cir. 2010) (holding that a prisoner's administrative remedies were "effectively unavailable" where prison officials rejected a grievance "for reasons inconsistent with or unsupported by applicable regulations").

Importantly, Galligar was not issued a misconduct report for the October 21, 2012 Asman altercation. His failure to file a timely level-two grievance regarding that altercation therefore cannot be excused. Under the ODOC rules, Galligar is now precluded from exhausting his administrative remedies. *See* Or. Admin. R. 291-109-0150(2). Therefore, Galligar's claims regarding the October 21, 2012 Asman altercation should be dismissed for failure to exhaust administrative remedies. *See Woodford*, 548 U.S. at 88 (requiring proper exhaustion).

The importance of Galligar's November 17, 2012 housing assignment is unclear, as there is no evidence of a subsequent altercation. However, to the extent Galligar bases a claim on the housing assignment, I find the claim should be dismissed for failure to exhaust administrative remedies. Galligar never filed a timely level-two grievance about the November 17, 2012

PAGE 14 – FINDINGS AND RECOMMENDATION

housing assignment. Under the ODOC rules, he is now precluded from exhausting his administrative remedies. *See* Or. Admin. R. 291-109-0150(2). Therefore, Galligar's claim regarding his November 17, 2012 housing assignment should be dismissed for failure to exhaust administrative remedies. *See Woodford*, 548 U.S. at 88 (requiring proper exhaustion).

## II. Failure to Allege Sufficient Facts Showing Franke, Reynolds, H. Demos, Jackson, Nooth, or Hannon Were Personally Involved in the Deprivation of Galligar's Constitutional Rights

The defendants argue that Galligar has failed to allege sufficient facts to permit a reasonable jury to find Franke, Reynolds, H. Demos, Jackson, Nooth, or Hannon were personally involved in the deprivation of his constitutional rights. Although this argument is well-taken, it is premature for me to determine which defendants Galligar has stated claims against because, as discussed below, I recommend granting the defendants' Rule 12(e) motion. Consequently, I will wait until Galligar files his second amended complaint to consider which defendants he has adequately stated claims against.

## III. Motion for a More Definite and Certain Statement

Pursuant to Federal Rule of Civil Procedure 12(e), the defendants move the court to dismiss Galligar's first amended complaint with leave to file a second amended complaint containing a more definite and certain statement of the claims that survive the defendants' motion for summary judgment. I find that Galligar's pleadings are "so vague [and] ambiguous that the [defendants] cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Therefore, the defendants' Rule 12(e) motion should be granted.

Again, Galligar's complaint is not a model of clarity. It unclear which altercations Galligar bases his claims on. Additionally, it is unclear which defendants Galligar alleges are liable for failing to protect him from the different altercations. It is clear, however, that Galligar failed to exhaust his administrative remedies regarding the three unspecified altercations, the

PAGE 15 – FINDINGS AND RECOMMENDATION

September 23, 2011 Butts altercation, and the October 21, 2012 Asman altercation. Consequently, Galligar may not assert claims predicated on any of those altercations in his second amended complaint.

In his second amended complaint, Galligar must clarify which defendants he is asserting claims against and which altercation each claim is based on. He must also name all of the defendants in the caption of the complaint. *See* LR 10-2(d). Additionally, the complaint must contain "a short and plain statement" showing that he is "entitled to relief" under each of his claims. *See* Fed. R. Civ. P. 8. Stated another way, Galligar must connect his factual allegations with his claims that the individual defendants violated his constitutional rights, and the connection must be clear enough to enable the defendants to prepare a response. *See* Fed. R. Civ. P. 12(e).

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment (#35-1) should be granted in part and denied in part. The defendant's motion for a more definite and certain statement of Galligar's remaining claims (#35-2) should be granted. Galligar's first amended complaint should be dismissed with leave to file a second amended complaint within sixty (60) days. The second amended complaint must comply with the United States Court for the District of Oregon's Local Rules, the Federal Rules of Civil Procedure, and the instructions set forth herein.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that

PAGE 16 – FINDINGS AND RECOMMENDATION

date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(l) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 29th day of July, 2014.

_____
Honorable Paul Papak
United States Magistrate Judge

PAGE 17 – FINDINGS AND RECOMMENDATION