IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR JOHN GALLIGAR,

        Plaintiff,

v.

STEVEN FRANKE, et al.,

        Defendants.

2:12-cv-01891-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Incarcerated plaintiff Arthur John Galligar filed this action *pro se* against Mark Nooth, Steve Franke, Lieutenant Duftoth, Captain Mark Peterson, V. Reynolds, Lieutenant Osborn, Sergeant Krieger, Officer Ward, Officer V. Demos, Officer H. Demos, two Doe defendants, Captain Jackson, Michael Vokral, Joseph Bugher, and Al Hannon on October 15, 2012.[1]

---

[1] The caption of Galligar's initial complaint listed only Nooth and Franke as defendants, but parties section listed additional defendants, in violation of Local Rule 10-2(d). *See* Prisoner Civil Rights Compl., #2, at 1, 3. Consequently, I entered an order on February 7, 2013, dismissing Galligar's initial complaint with leave to file an amended complaint within thirty days. Order to Dismiss, #8. Galligar's amended complaint still fails to properly name the defendants in the caption. *See* Am. Prisoner Civil Rights Compl. ("Compl."), #10, at 1.

Page 1 - FINDINGS AND RECOMMENDATION

Galligar alleges that defendants violated 42 U.S.C. § 1983 by failing to protect him from attacks by other inmates. This court has federal-question jurisdiction over Galligar's claims pursuant to 28 U.S.C. § 1331.

Now before the court is the Motion to Dismiss (#91) for failure to state a claim proffered by Defendants Nooth, Peterson, and Bughers, employees of the Snake River Correctional Institution (collectively "SRCI Defendants"). I have considered the motion and all of the pleadings on file. For the reasons set forth below, the SRCI Defendants' Motion should be granted.

## FACTUAL BACKGROUND[2]

### I. Parties

Galligar was admitted to the custody of the Oregon Department of Corrections ("ODOC") on March 12, 2009. Decl. of James Taylor ("Taylor Decl."), #38, 3. Galligar was initially housed at the Snake River Correctional Institution ("SRCI"), where he resided until he was transferred to the Two Rivers Correctional Institution ("TRCI") on November 30, 2011. *Id.*; Decl. of Robert Hillmick ("Hillmick Decl."), #37, ¶ 3.

Defendants Peterson and Vokral are captains at SRCI. Compl., #10, at 3; Mot. to Show Exs. ("Pl.'s Br."), #58-1, at 7. Defendant Nooth is a superintendent at SRCI. Compl., #10, at 3. Defendant Hannon is a security manager at SRCI. Id. at 5. The two Doe defendants are officers at SRCI. *Id.* at 4. Defendant Bugher is a counselor at SRCI. *Id.*

Defendant Krieger is a sergeant at TRCI. *Id.* at 3, 6. Defendant Jackson is a captain at TRCI. Pl.'s Br., #58-1, at 19. Defendants Duftoth and Osborn are lieutenants at TRCI. *Id.* at 15;

---

[2] The following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Page 2 - FINDINGS AND RECOMMENDATION

Compl., #10, at 3. Defendant Franke is a superintendent at TRCI. Compl., #10, at 3. Defendant Reynolds is a grievance coordinator at TRCI. *Id.* Defendants Ward and V. Demos are officers at TRCI. *Id.* at 5. Defendant H. Demos is a counselor at TRCI. Pl.'s Br., #58-1, at 14.

## II.     Grievance Procedure

Grievances at both SRCI and TRCI are processed according to a four-level procedure set forth in chapter 291, division 109 of the ODOC administrative rules. Hillmick Decl., #37, ¶ 5; Taylor Decl., #38, ¶ 5. Inmates are informed of the grievance procedure during orientation when they first arrive at the prison. Taylor Decl., #38, ¶ 6. The process is also set forth in the inmate handbook. *Id.* Additionally, inmates can ask any housing unit officer for a grievance form, which is accompanied by an instruction sheet. *Id.*

At level one of the grievance procedure, inmates are encouraged to informally communicate grievances with first line staff as their primary means of resolving disputes prior to formally filing a grievance. Or. Admin. R. 291-109-0140(1)(a). If the initial communication does not resolve the grievance, the inmate may proceed to level two by completing a grievance form. *Id.* Grievance forms must be filed with the grievance coordinator within thirty days of the aggrieving incident and contain "a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." *Id.* 291-109-0140(1)(b), 0150(2). An inmate cannot grieve misconduct reports or issues for which the inmate has filed suit in state or federal court. *Id.* 291-109-0140(3)( e), (i).

At level three, an inmate may appeal the grievance coordinator's decision regarding the inmate's level-two grievance form to the functional unit manager. *Id.* 291-109-0170(1). The inmate must file a grievance appeal form with the grievance coordinator within fourteen days of

Page 3 - FINDINGS AND RECOMMENDATION

the date the level-two grievance response was sent to the inmate. *Id.* 291-109-0170(l)(b). At level four, the inmate may appeal the decision made by the functional unit manager by filing an additional grievance appeal form with the grievance coordinator within fourteen days of the date the level-three grievance response was sent to the inmate. *Id.* 291-109-0170(2).

### III. Material Facts

Galligar was involved in eight separate altercations with other ODOC inmates, all of whom were affiliated with prison gangs. Galligar has not provided the dates or the names of the other persons involved in the first three altercations (the "unspecified altercations"). However, it is undisputed that all three of the unspecified altercations occurred at SRCI sometime before September 25, 2011. *See* Compl., #10, at 5; Pl.'s Br., #58-1, at 10, 18.

On August 23, 2011, Galligar presented a picture of inmate Butts to Vokral and Bugher, warning them that Butts was planning to attack him. Compl., # 10, at 4. Neither Vokral nor Bugher acted in response. *Id.* On September 3, 2011, Galligar wrote an inmate communication form ("kyte") to Peterson, expressing "security concerns" and requesting to be moved out of Complex Three. *Id.*; Pl.'s Br., #58-1, at 11.

On September 23, 2011, Galligar was involved in his fourth altercation at SRCI, when he engaged in a fight with Inmate Abel in the Complex Three Dining Hall. *Id.* at 10. As a result, Galligar was issued a misconduct report and placed in the Disciplinary Segregation Unit ("DSU"). Taylor Decl., #38, at 15-17. Butts was also housed in DSU at the time. Pl.'s Br., #58-1, at 10. Galligar and Butts were initially both handcuffed and placed into the same cell. *Id.* Two Doe officers then removed Butts's handcuffs and permitted Butts to physically assault Galligar. *Id.* The Butts assault was Galligar's fifth altercation at SRCI.

Page 4 - FINDINGS AND RECOMMENDATION

On September 25, 2011, Galligar sent a kyte to Hannon. Compl., #10, at 5. Although Galligar alleges in his complaint that he wrote the kyte after being attacked five times, he does not explain what the kyte pertained to and has not provided a copy to the court. *See id.*

On September 27, 2011, Galligar sent a kyte to his functional unit manager, complaining about the Abel and Butts altercations and requesting reconsideration of the resulting misconduct report. Pl.'s Br., #58-1, at 18. Consequently, prison officials conducted a misconduct hearing and determined that Galligar was involved in a mutual fight with Abel, in violation of Rule 2.06, Inmate Assault II. Taylor Decl., #38, at 16. Galligar appealed the hearing officer's decision to the Inspector General, who affirmed the hearing officer's determination. *Id.* at 18–20. As a result, Galligar's complaints pertaining to the Abel altercation were not reviewable under the ODOC grievance review system. *See* Or. Admin. R. 291-109-0140(3)(e).

On November 7, 2011, Galligar filed a tort claim notice with the Oregon Department of Administrative Services, alleging damages from the Abel and Butts altercations and naming Butts, Abel, Nooth, Peterson, Vokral, and Hannon as defendants. Pl.'s Br., #58-1, at 29-31.

Galligar's sixth altercation at SRCI occurred on November 13, 2011, when he was assaulted by an unnamed inmate. *See id* at 8. Galligar reported the altercation to Captain Eastwood on November 17, 2011, and requested to be moved to Complex One. *Id.* Eastwood responded that the issue had been "investigated and forwarded . . . " according to procedure. *Id.*

Galligar filed his first level-two grievance on November 17, 2011, claiming that throughout the course of the year, he had been assaulted on five separate occasions and that the SRCI staff members responsible for his housing arrangements were acting with deliberate indifference to his safety by housing him with gang members. *Id* at 3. The grievance coordinator

Page 5 - FINDINGS AND RECOMMENDATION

rejected Galligar's grievance on November 21, 2011, informing Galligar that he was prohibited from grieving issues raised in his November 7, 2011, tort claim notice. Taylor Decl., #38, ¶¶ 13-14; *see also* Defs.' Br., #36, at 10. Galligar never appealed the grievance coordinator's November 21, 2011 decision. However, he was transferred to TRCI several days later, on November 30, 2011. Taylor Decl., #38, ¶ 3; Hillmick Decl., #37, ¶ 3.

On January 13, 2012, Galligar filed a complaint in the United States District Court for the District of Oregon, naming Nooth, Peterson, Hannon, Vokral, Bugher, and the Inspector General as defendants and, with the exception of the two altercations with Inmate Asman discussed below, alleging the same constitutional violations that are at issue in this case. *See Galligar v. Nooth et al.*, No. 2: 12-cv-00082-SI (D. Or. Aug. 23, 2012) [hereinafter *Galligar 1*]. Galligar filed a motion to voluntarily dismiss *Galligar 1* on August 1, 2012, acknowledging that he had not exhausted his administrative remedies. Def.'s Br., #36, at 5; Pl.'s Br., #58-1, at 32. The court granted Galligar's motion and dismissed the case without prejudice on August 22, 2012. *Galligar I,* No. 2:12-cv-00082-SI, Order, August 22, 2012, #35.

Galligar filed a level-two grievance on September 17, 2012, claiming that the TRCI staff had deliberately housed him in an active gang unit and assigned him a cellmate who was a gang member. Pl.'s Br., #58-1, at 4. Before receiving a response from the grievance coordinator, Galligar proceeded to level three of the grievance procedure by filing a grievance appeal form on September 24, 2012. Hillmick Decl., #37, at 11. The following day, the grievance coordinator rejected Galligar's appeal form, stating that Galligar "may not submit an appeal" because he had not yet received a response to his original grievance. Pl.'s Br., #58-1, at 25. On October 18, 2012, the grievance coordinator rejected Galligar's September 17, 2012 level-two grievance,

Page 6 - FINDINGS AND RECOMMENDATION

stating that Galligar had been "housed appropriately and in accordance with ODOC rules and policies." Hillmick Decl., #37, at 13. Galligar never appealed the grievance coordinator's October 18, 2012 decision.

Meanwhile, on October 15, 2012, Galligar filed his first complaint in this case. Prisoner Civil Rights Compl., #2, at 4.

Galligar's seventh altercation occurred on October 21, 2012, when he was attacked at TRCI by Inmate Asman, Galligar's cellmate. Compl., #10, at 5. Galligar verbally reported the incident to Ward, Krieger, and V. Demos, all of whom failed to assign Galligar a new cellmate. *Id.* Asman and Galligar fought again in their cell at TRCI on November 4, 2012—Galligar's eighth and final altercation. *Id.* at 6; Hillmick Decl., #37, at 14. Galligar received a misconduct report for the November 4, 2012 altercation but not for the October 21, 2012 altercation. *See* Hillmick Decl., #37, at 14. He appealed the report, and prison officials conducted a misconduct hearing on November 8, 2012. *Id.* at 18-19. The hearing officer determined that Galligar "committed a unilateral attack or was involved in a mutual fight," in violation of Rule 2.07, Inmate Assault III, and Rule 2.10, Disrespect I. *Id.* at 19. As a result, Galligar was placed in DSU from November 4, 2012, through November 17, 2012. *Id.*

On November 12, 2012, Galligar sent a kyte to Duftoth, asking to be placed in Unit Five when he was released from DSU. Pl.'s Br., #58-1, at 20. Duftoth responded that Galligar could not be relocated to a different unit because he had "no documented conflicts to review prior to [his] cell assignment." *Id.* Upon release from DSU, Galligar was again housed with gang members. Compl., #10, at 6.

Galligar filed his amended complaint in this case on February 14, 2013. *Id.* On June 10,

Page 7 - FINDINGS AND RECOMMENDATION

2013, Galligar filed a level-two grievance for the express purpose of exhausting his administrative remedies regarding the September 23, 2011, Butts altercation. Pl.'s Br., #58-1, at 24. On June 19, 2013, the grievance coordinator rejected the grievance as untimely. *Id.* at 26. On June 24, 2013, Galligar appealed the grievance coordinator's June 19, 2013 decision. *Id.* at 23. On June 28, 2013, the grievance coordinator rejected Galligar's appeal and informed Galligar that an untimely level-two grievance could not be appealed. *Id.* at 27.

On September 24, 2014, Judge Mosman found that Galligar's first claim was based on his September 23, 2011, altercation with Butts and his second claim was based on Hannon's unresponsiveness to Galligar's letter dated September 25, 2011. Opinion & Order, #74, 3–4. Judge Mosman went on to dismiss Galligar's first and second claims with prejudice for failure to exhaust nonjudicial remedies. *Id.*

On March 12, 2015, Galligar filed this Third Amended Complaint[3] (#89) naming Defendants Hannon, Vokral, and, for the first time, Eastwood. Galligar brings his first claim against the SRCI Defendants and bases that claim on the incident that took place on November 13, 2011, mentioned above. Importantly, Galligar did not bring suit for that incident prior to March 2015, but merely mentions it in the facts section of his Second Amended Complaint, and Galligar did not exhaust grievance procedures in relation to the November 13, 2011 altercation. *See* Second Amended Complaint, #72, 2; Findings & Recommendation, #65, 8.

SRCI Defendants filed this Motion to Dismiss for Failure to State a Claim on March 30, 2015 (#91). Galligar responded on April 15, 2015 (#102). SRCI Defendants did not issue a

---

[3] Within the document, Galligar styles this filing as his Second Amended Complaint. For the sake of clarity, I will refer to that filing as the Third Amended Complaint.

Page 8 - FINDINGS AND RECOMMENDATION

reply. This matter is ready for a decision.

## DISCUSSION

The statute of limitations applicable to Galligar's Section 1983 claims is determined by state law, specifically the state-law limitations period applicable to personal injury torts. *See Harding v. Galceran*, 889 F.2d 906, 907 (9th Cir. 1989), citing *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). In Oregon, the applicable limitations period is two years. *See* Or. Rev. Stat. 12.110(1); *see also Cooper v. Ashland*, 871 F.2d 104, 105 (9th Cir. 1989).

Courts look to federal law to determine when a cause of action accrues. *Haden v. Williams*, 2014 WL 6893708, at *4 (D. Or. 2014), citing *Briley v. California*, 564 F.2d 849, 854 (9th Cir. 1977). A cause of action accrues at the time of the alleged injury. *Wallace v. Chicago*, 440 F.3d 421, 427 (7th Cir. 2006), *aff'd*, 549 U.S. 384 (2007). Further, the limitations period applicable to a prisoner's lawsuit must be tolled while the prisoner pursues institutional administrative remedies. *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

Based on the above standards, the limitations period for claims related to Galligar's alleged injury on November 13, 2011, accrued that day but was tolled during his pursuit of grievance procedures, which did not extend beyond November 21, 2011, when his grievance related to that incident was rejected without subsequent appeal. Taylor Decl, #38, ¶¶ 13–14. Because more than two years have passed since the incident, Galligar's claim related to the November 13, 2011, incident, therefore, is untimely unless it relates back to Galligar's timely filed complaint.

An amendment to a pleading, such as those Galligar filed in his Third Amended Complaint, may relate back to the original filing under the following circumstances:

Page 9 - FINDINGS AND RECOMMENDATION

> 1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

Fed. R. Civ. P. 15(c)(1)(B). Further, the Oregon Rule of Civil Procedure that governs relation back provides the following:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment.

Oregon R. Civ. P. 23(c).

In Section 1983 suits, federal courts apply state rules governing whether an amended complaint relates back to the filing of the original complaint. *See Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989); *Clavette v. Sweeney*, 132 F. Supp. 2d 864, 875 (D. Or. 2001).

I note, as a preliminary matter, that Galligar's addition of defendant Eastwood in his Third Amended Complaint does not relate back to the original timely filed complaint. The Supreme Court has held that the proper inquiry "under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the Plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 553–54. Because Galligar only named

Page 10 - FINDINGS AND RECOMMENDATION

Eastwood well after the limitations period for an action arising from injuries related to the November 2011 incident, I do not find that Eastwood has received such notice of the institution of this action that he will not be prejudiced in maintaining a defense. Further, I find no "mistake" under the mistake doctrine in failing to join Eastwood in a timely manner. *See, e.g., Gowin v. Multnomah County*, 28 F.Supp.2d 1188, 1190 nn. 2–3 (D. Or. 1998) (failing to extend the mistake doctrine even to individual's whose identities were unknown to plaintiff at the time of filing). Therefore, defendant Eastwood should be dismissed from this action with prejudice, as claims against him are untimely.

Returning to Galligar's first claim for relief in his Third Amended Complaint, I must similarly determine whether that claim relates back to the initial complaint. Defendants, in their motion, offer several arguments against relation back: (1) "[t]o the extent that Galligar alleges that SRCI Defendants are liable based on incidents other than the November 13, 2011 assault, those claims have already been dismissed by this court with prejudice"; (2) "[t]he November 13, 2011, incident involves an 'unknown' assailant, and presumably a different assailant from the other 2011 incidents referenced by Galligar"; (3) "the November 13, 2011, incident occurred in a different location—the Complex 2 corridor—from the other incidents"; and (4) Galligar's attempt to add Vokral, Eastwood, and Hannon is evidence against relation back, as his claim now involves different parties. SRCI Def.'s Motion, #91, 3–4. In response, Galligar incorrectly identifies the moving defendants as the TRCI defendants and states that his "exhibits shows they [knew] I was going to be assaulted" and that he has "[kytes] and exhibits that they did know." Pl.'s Resp., #102. Although I find Galligar's response inapposite due to the fact that those allegations are irrelevant tin determining whether an unrelated incident for which Galligar did not

Page 11 - FINDINGS AND RECOMMENDATION

exhaust administrative procedures relates back, I still construe his *pro se* pleadings liberally consistent with the relevant standard. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), *citing Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

Even construing Galligar's pleadings and Third Amended Complaint liberally, I do not find that the first claim arises out of the same conduct, transaction, or occurrence set forth in Galligar's original, timely-filed petition. I note that, while Galligar offers that incident along with seven others in his factual background, a new claim arising out of that incident and filed well-after the limitations period has run is nonetheless untimely filed. I further note that Galligar has been given multiple chances to amend his complaint to allege only fully exhausted claims. I distinguish this situation from that anticipated in *Lira v. Herrera*, 472 F.3d 1164, 1175–76 (9th Cir. 2005), where the Ninth Circuit acknowledged the inherent difficulty in untangling a complaint including exhausted and unexhausted claims that are closely related. In contrast, the Supreme Court provided an opposing stance in *Mayle v. Felix*, applicable to federal habeas claims, holding that an untimely claim filed that simply arises out of a prisoner's trial or sentence, is insufficient to meet the "conduct, transaction, or occurrence" test of the "relation back" standard. In *Lira*, however, the Ninth Circuit acknowledged the rigid *Mayle* standard but nonetheless drew a stark contrast by describing a looser relation back standard applicable to prisoners' exhausted and unexhausted claims. The *Lira* court stated that a prisoner-petitioner should be granted leave to "amend the petition to delete unexhausted claims, rather than returning to state court to exhaust all of his claims." 472 F.3d at 1176. In this case, consistent with *Lira,* this court has done just that and dismissed Galligar's prior claims without prejudice and allowed him to untangle exhausted and unexhausted claims. *See* Opinion & Order, #74.

Page 12 - FINDINGS AND RECOMMENDATION

Consequently, however, Galligar has now amended his complaint to include a claim that does not, in fact, arise out of the same "conduct, transaction, or occurrence" as prior claims, save for it arising out of an altercation in which Galligar was involved. Given the abundance of such altercations, the disparate loci of the incidents between the November 13, 2011, incident and the other incidents for which Galligar did in fact timely file in this court, and the fact that Galligar's new claim implicates a new defendant and an "unknown" assailant,, I find that Galligar's first claim against the SRCI defendants does not relate back to his timely filed petition. Allowing Galligar to untangle exhausted and unexhausted claims is acceptable, per *Lira*, and this court has correctly given Galligar that courtesy. Allowing him to draw up a new claim for every altercation in which he is involved in response to dismissal of timely filed claims, however, exceeds the ambit of the relation back standard. Therefore, Defendants' motion should be granted and Galligar's first claim in his Third Amended Complaint should be dismissed with prejudice.

## CONCLUSION

Consistent with the foregoing, SRCI Defendants' Motion (#91) should be granted and Galligar's claims against those Defendants should be dismissed with prejudice. Further, defendant Eastwood should be dismissed from this action, as any claim against him is untimely.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fomieen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that

/ / /

date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de nova consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(l) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 9th day of June, 2015.

_____
Honorable Paul Papak
United States Magistrate Judge