IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ARTHUR JOHN GALLIGAR,

        Plaintiff,

v.

STEVEN FRANKE, et al.,

        Defendants.

No. 2:12-cv-01891-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff Arthur John Galligar filed this *pro se* action *in forma pauperis* on October 19, 2012, asserting 42 U.S.C. § 1983 claims against various Oregon Department of Corrections ("ODOC") employees. The court has previously dismissed several claims asserted by Galligar in this matter. *See* July 29, 2014 Findings and Recommendation (#65), *adopted and modified by*, September 24, 2014 Opinion and Order (#74); June 9, 2015 Findings and Recommendation (#103), *adopted by*, July 17, 2015 Opinion and Order (#116). Plaintiff's Third Amended Complaint (#89) is the operative pleading. Galligar's only remaining claim alleges defendants Franke, Osborn, Jackson, Kreiger, Ward, and V. Demos (collectively, "Defendants") violated Galligar's Eighth Amendment rights by failing to protect him from an attack by his cellmate on

FINDINGS AND RECOMMENDATION—PAGE 1

November 4, 2012.[1] Now before the court is Defendants' Motion for Summary Judgment (#123) ("Defendants' Motion"). I have considered the Motion, the parties' briefs, and the relevant exhibits. For the reasons provided below, Defendants' Motion should be denied.

## FACTUAL BACKGROUND[2]

Galligar was admitted to the custody of the ODOC on March 12, 2009. Taylor Decl. 3 (#38). Galligar was initially housed at the Snake River Correctional Institution ("SRCI"), where he resided until he was transferred to the Two Rivers Correctional Institution ("TRCI") on November 30, 2011. *Id.*; Hillmick Decl. ¶ 3 (#37).

Defendant Franke was the superintendent of TRCI. Answer ¶ 2 (#92). Defendant Osborn was a sergeant at TRCI. *Id.* Defendant Jackson was a captain at TRCI. *Id.* Defendant Krieger was a corporal at TRCI. *Id.* Defendants Ward and V. Demos were officers at TRCI. *Id.*

Since 2009, Galligar has been involved in eight separate altercations with other ODOC inmates, all of whom were affiliated with white supremacist prison gangs. The first six altercations took place at SRCI. Upon being transferred to TRCI, Galligar was placed in Unit 6, which he contends was an active gang unit. Galligar notified ODOC employees that he feared for his safety in Unit 6 in light of his prior altercations with prison gangs. Galligar's cellmate in Unit 6, Geoffrey Asman, was affiliated with white supremacist prison gangs. The seventh and eighth altercations took place at TRCI between Galligar and Asman.

---

[1] Plaintiff asserts two claims in his Third Amended Complaint (#89). However, the court previously dismissed the first claim with prejudice. *See* June 9, 2015 Findings and Recommendation 13 (#103), *adopted by*, July 17, 2015 Order (#116). Thus, only the second claim remains. That claim is based on the November 4, 2012 altercation and is asserted against defendants Franke, Osborn, Jackson, Kreiger, Ward, and V. Demos.

[2] I view the evidentiary record according to the legal standard governing motions for summary judgment under Federal Rule of Civil Procedure 56. Specific citations to material facts in the record are provided in the Discussion section below.

The seventh altercation occurred on October 21, 2012, when Galligar accused Asman of being a thief and Asman kicked Galligar in the throat. Although Asman told Galligar that the kick was an accident, Galligar reported the altercation to Defendants and told them that he feared for his safety as a result. Neither Galligar nor Asman were relocated to a different cell as a result of the October 21, 2012 altercation.

The eighth altercation, also between Galligar and Asman, occurred several days later, on November 4, 2012. Galligar testified that he again confronted Asman about stealing from him and Asman responded attacking Galligar in their shared cell. Hallman Decl. Ex. A, at 5 (#124). As a result, Galligar suffered abrasions to his face and temple. Both Galligar and Asman received misconduct reports for the altercation. *See* Hillmick Decl. 14 (#37). Galligar appealed his report, and the ODOC determined that he had "committed a unilateral attack or was involved in a mutual fight" in violation of prison rules. *Id.* at 19. As stated above, Galligar's Eighth Amendment claim is based on Defendants' failure prevent the November 4, 2012 altercation.

## PROCEDURAL BACKGROUND

Galligar filed his Third Amended Complaint (#89) on March 12, 2015. Defendants filed their Motion for Summary Judgment (#123) on August 28, 2015. Galligar filed his Response (#128) on September 14, 2015. Defendants filed their Reply (#129) on September 28, 2015. This matter is fully submitted and prepared for decision.

## DISCUSSION

Defendants raise two primary arguments through their Motion. First, Defendants argue they are entitled to summary judgment because Galligar cannot prove that any of them were deliberately indifferent to a substantial risk of serious harm posed by Asman prior to the November 4, 2012 attack. Second, Defendants argue that even if Galligar could make out an

FINDINGS AND RECOMMENDATION—PAGE 3

Eighth Amendment claim, his suit is barred by the Prison Litigation Reform Act ("PLRA") because he suffered only a *de minimis* physical injury. I address each argument, in turn, below.

## I. Eighth Amendment Deliberate Indifference Claim

I find there are genuine issues of material fact as to whether Defendants violated Galligar's Eighth Amendment rights by failing to protect him from the November 4, 2012 Asman attack. The Ninth Circuit recently explained the two-pronged test applied to an Eighth Amendment claim based on a prison official's failure to protect an inmate from an attack by another prisoner:

> The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official violates this duty when two requirements are met. *Id.* at 834, 114 S.Ct. 1970. First, objectively viewed, the prison official's act or omission must cause "a substantial risk of serious harm." *Id.* Second, the official must be subjectively aware of that risk and act with "deliberate indifference to inmate health or safety." *Id.* at 834, 839–40, 114 S.Ct. 1970 (internal quotation marks omitted).

*Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

Defendants contend that Galligar cannot establish either prong of the deliberate indifference test because he cannot show that any of the defendants disregarded a substantial risk of serious harm that Asman posed Galligar prior to the November 4, 2012 attack. Defendants further argue that Galligar's general fears of attacks by other gang-affiliated inmates cannot support his Eighth Amendment claim.

In response, Galligar argues: "The Defendants knew because I showed in the Kytes[3] that they knew of the threats I went threw." Resp. 2 (#128). Galligar does not cite to any particular evidence of the record. However, in light of Galligar's status as a *pro se* litigant, I exercise my discretion to examine and consider all evidence of record. *See* Fed. R. Civ. P. 56(c)(3) ("The

---

[3] A Kyte is an inmate communication form.

FINDINGS AND RECOMMENDATION—PAGE 4

court need consider only the cited materials, but it may consider other materials in the record."); *see also Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002) (A "pro se complaint should be dismissed only if it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987))); *United States v. Seesing*, 234 F.3d 456, 462 (9th Cir. 2000) ("Pro se complaints and motions from prisoners are to be liberally construed" (footnote omitted) (citations omitted)), *as amended* (Jan. 29, 2001).

### A. The Objective Prong

A reasonable trier of fact could find that Defendants exposed Galligar to a substantial risk of serious harm by housing him in an active gang unit and failing to assign him a new cellmate after the October 21, 2012 Asman altercation. "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075-76 (9th Cir. 2013) (citation omitted).

It is undisputed that, prior to the November 4, 2012 attack underlying Galligar's Eighth Amendment claim, Galligar and Asman were involved in a separate altercation in their shared cell. As stated above, that prior altercation occurred on October 21, 2012, when Galligar accused Asman of being a thief and Asman kicked Galligar in the throat. *See* Hallman Decl. Ex. A, at 5-6 (#124).[4] Galligar reported the incident to each of the defendants and informed them

---

[4] Galligar seems to admit that, at the time of the incident, he may have believed Asman's claim that the kick was unintentional, but there is no evidence that he ever informed Defendants of that belief. *See* Hallman Decl. Ex. A, at 5-7. Moreover, in light of the subsequent assault by Asman, it appears unlikely that the October 21, 2012 kick was unintentional. Thus, Galligar's private, subjective uncertainty as to Asman's intent regarding the October 21, 2012 assault would not preclude a reasonable trier of fact from finding that Galligar was subjected to a substantial risk of serious harm by being required to share a cell with Asman after that assault.

FINDINGS AND RECOMMENDATION—PAGE 5

that he feared for his safety as a result. *See id.* Ex. A, at 5, 12-21, Ex. B, Ex. D, Ex. E, at 4. However, none of the defendants attempted to move Galligar or Asman to a different cell. Defendants' inaction subsequent to the October 21, 2012 altercation is sufficient to preclude summary judgment on Galligar's Eighth Amendment claim. *See Cortez*, 776 F.3d at 1051 (citing recent hostilities between the plaintiff and attacking prisoners as evidence that the plaintiff was subjected to a substantial risk of serious injury); *cf. Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) (granting Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim and relying on the fact that the plaintiff had not been involved in a prior altercation with the assaultive inmate or other members of the assaultive inmate's gang); *Toscano v. Lewis*, No. C-12-5893 EMC (PR), 2015 WL 4940832, at *19 (N.D. Cal. Aug. 19, 2015) (same); *Dillingham v. Johnson*, No. 13-CV-05777-YGR (PR), 2015 WL 5590735, at *15 (N.D. Cal. Sept. 23, 2015) (same).

Moreover, it is undisputed that, prior to the November 4, 2014 attack, Galligar had a long-standing dispute with various white supremacist prison gangs. *See* Resp. to Mot. to Dismiss Ex. 1 (#58-1) (grievance forms). As stated above, that dispute resulted in six physical altercations between Galligar and other inmates prior to the two Asman altercations. *See id.* Galligar has presented evidence that, at the time of the November 4, 2012 attack, he was housed in an active gang unit and Asman was affiliated with one of the gangs that he was feuding with. *See id.* Ex. 1, at 2, 4, 13-14, 19-20[5]; Hallman Decl. Ex. A, at 13, 30, Ex. B (#124); *see also Lemire*, 726 F.3d at 1076 ("[I]n order to satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes."

---

[5] This exhibit does not contain page numbers. The pinpoint citations correspond to the pages of the document as displayed in the court's Case Management and Electronic Case Files.

(citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002))). Thus, Galligar's general housing arrangements at TRCI serve as additional evidence from which a reasonable trier of fact could infer that he was subjected to a substantial risk of serious harm. *See Lemire*, 726 F.3d at 1077 ("A jury could infer that unsupervised mentally ill inmates housed together are more likely to harm themselves or others than are inmates in the regular prison population.").

### B. The Subjective Prong

A reasonable trier of fact could also find that Defendants were subjectively aware of the substantial risk posed by Asman and acted with deliberate indifference to Galligar's safety. "Deliberate indifference is 'something more than mere negligence' but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 835). Thus, the subjective prong of the Eighth Amendment failure to protect test is twofold: "First, [Galligar] must demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk . . . . Second, [Galligar] must show that there was no reasonable justification for exposing [him] to the risk." *Lemire*, 726 F.3d at 1078 (citations omitted). Like the objective prong, the subjective prong is "fact-intensive and typically should not be resolved at the summary judgment stage." *Id.*

Galligar has generated a genuine issue of material fact as to whether Defendants were aware of the substantial risk of harm posed by Asman. A reasonable trier of fact could find that keeping Galligar and Asman in the same cell after the October 21, 2012 altercation created an obvious risk. "[O]bviousness is not measured by what is obvious to a layman, but rather by what would be obvious 'in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved.'" *Id.* (quoting *Thomas*

*v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010)). A prison official may be presumed to know that it is dangerous to house two inmates in the same cell after one of the inmates assaults the other and causes him to fear for his safety.

Galligar testified at deposition that he notified each of the named defendants that he feared for his safety as a result of the October 21, 2012 incident where Asman kicked him in the throat. *See* Hallman Decl. Ex. A, at 5, 12-21, Ex. B, Ex. D, Ex. E, at 4 (#124).[6] Galligar has also proffered evidence that he informed defendants Osborn, Jackson, Ward, and Demos of his larger ongoing dispute with white supremacist gang members in unit 6. *See id.* Ex. A, at 13-14, 21-24, Ex. B; Resp. to Mot. to Dismiss Ex. 1, at 4, 13 (#158-1); *see also* Answer ¶ 4 (#92). However, none of the defendants attempted to remove Galligar or Asman from their shared cell, and several days later, Asman attacked Galligar, giving rise to this suit.

I reject Defendants' argument that Galligar's prior disputes with prison gangs constitute only "general threats" that fail to give rise to an Eighth Amendment claim. *See Cortez*, 776 F.3d at 1051-52 & n.5 (holding that a reasonable trier of fact could infer deliberate indifference from a guard's failure to protect a prisoner who was perceived as a protective custody inmate and therefore subject to a heightened risk of attack). In support of their argument, Defendants cite *Chandler v. Amsberry*, No. 3:08-CV-00962-SI, 2014 WL 1323048 (D. Or. Mar. 28, 2014). That case in inapposite. There, unlike this case, the plaintiff's claim was not based on an actual injury

---

[6] The record also contains an inmate communication form addressed to Osborn in which Galligar expressed concern regarding the October 21, 2012 altercation. *See* Hallman Decl. Ex. C (#124). However, the communication form is not marked as received and is not signed by Osborn. There is nothing else in the record indicating that the form was ever sent to, let alone received by, Osborn. Moreover, the form is dated October 12, 2012—nine days before Galligar alleges the altercation even took place. I therefore find that the communication form is irrelevant to Osborn's knowledge of the October 21, 2012 incident. However, Galligar's testimony that he informed Osborn that he was "leery that something else was going to happen" because Asman had stolen from him and kicked him in the throat is sufficient to create a jury question as to Osborn's knowledge. *See* Hallman Decl. Ex. A, at 14-15.

FINDINGS AND RECOMMENDATION—PAGE 8

but rather the threat of future harm. *Id.* at *7. Moreover, the plaintiff in *Chandler* "did not present evidence of a specific or direct threat of imminent bodily harm and the ability of another to effectuate that harm." *Id.* at *8. Conversely, in this case, the six prior altercations between Galligar and white supremacist gang members, coupled with Galligar's testimony that he was housed in an active gang unit at TRCI, evidences direct and specific threats of imminent bodily harm and the ability of other prisoners to effectuate that harm. *See id.* ("Critical to the analysis of whether a threat of harm can rise to the level of an Eighth Amendment violation is the imminence of the threat and the present ability of the person or persons making the threat to effectuate the threat." (citing *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986))).

A reasonable trier of fact could also find that Defendants' failure to attempt to remove Galligar or Asman from their shared cell after the October 21, 2012 altercation was unjustified. Indeed, Defendants do not argue they were justified in keeping both inmates in the cell. Galligar has presented evidence that he was moved to the active unit and housed with Asman for no particular reason and that he continuously attempted to obtain a new cellmate but was never presented with any reasonable alternatives. *See* Hall Decl. Ex. A, at 13-14, 21-24, Ex. B (#124); Resp. to Mot. to Dismiss Ex. 1, at 4, 13 (#158-1). Defendants do not argue that they were unable to assist with assigning Galligar a new cellmate. Thus, Galligar has generated a genuine issue of material fact as to whether Defendants were deliberately indifferent to the substantial risk of serious harm posed by Asman. *See Castro v. Cty. of Los Angeles*, 797 F.3d 654, 666 (9th Cir. 2015) (holding that a reasonable jury could find that the defendant officer was deliberately indifferent when he ignored the plaintiff prisoner's pleas for help); *Lemire*, 726 F.3d at 1079 ("Except in emergency situations, a failure to consider reasonable alternatives is strong evidence that a prison official's actions were unreasonable." (citing *Thomas*, 611 F.3d at)).

## II. PLRA Physical Injury Requirement

Defendants additionally argue that because Galligar suffered only minor personal injuries, he can only establish that he suffered a *de minimis* injury, which is not actionable under the Eighth Amendment. I disagree.

The PLRA limits prisoners' ability to sue for mental and emotional injury. The statute provides, in pertinent part:

> (e) Limitation on recovery
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e). The Ninth Circuit has interpreted this provision to preclude § 1983 prisoner suits for emotional injury that was not accompanied by more than a *de minimis* physical injury. *Oliver*, 289 F.3d at 627. Thus, "*for all claims to which it applies*, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Id.* (emphasis added) (footnote omitted).

Critically, The PLRA's physical injury requirement applies only to claims for mental and emotional injury. *See, e.g., id.* at 629-30. However, Galligar' claim is not based on mental or emotional injury. It is undisputed that Galligar suffered abrasions to his face and temple as a result of the altercation. *See* Hallman Decl. Ex. A, at 10, Ex. D, at 5-6, Ex. E, at 2 (#124). The "Relief" section of Galligar's Third Amended Complaint seeks $125 "for property damage" in relation to the cost of his eye glasses that were damaged in the November 4, 2012 altercation and $25,000 for "pain and injury." *See* Third. Am. Compl. 5-6 (#89); *see also Oliver*, 289 F.3d at 630 (construing a *pro se* plaintiff's damages pleading liberally). Because Galligar's claim is not based on mental or emotional injury, he need not show that he suffered more than a *de minimis*

FINDINGS AND RECOMMENDATION—PAGE 10

physical injury. *See, e.g., Oliver*, 289 F.3d at 629-30. Defendants are not entitled to summary judgment on the basis section 1997e(e).[7]

## CONCLUSION

For the reasons provided above, Defendants' Motion for Summary Judgment (#123) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge.

/ /

/ /

/ /

---

[7] Galligar also alleges that he suffered hearing loss as a result of the November 4, 2012 attack. *See* Hallman Decl. Ex. A, at 10 (#124). Galligar has not supported this allegation with any medical evidence. Defendants argue that competent medical evidence is required establish that the attack caused Galligar's purported hearing loss. However, this issue is not currently before the court, as the PLRA's physical injury requirement is inapplicable to Galligar's claim. *See, e.g., Oliver v. Keller*, 289 F.3d 623, 629-30 (9th Cir. 2002).

FINDINGS AND RECOMMENDATION—PAGE 11

These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(l) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 28th day of December, 2015.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

FINDINGS AND RECOMMENDATION—PAGE 12